UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UTHUPPAN ("JAKE") JACOB,

                                  Case No.:

    Plaintiff,

v.

KOREAN AIR LINES CO., LTD.

    Defendant.
_____/

## COMPLAINT FOR DAMAGES

Plaintiff, UTHUPPAN ("JAKE") JACOB, by counsel, sues the Defendant KOREAN AIR LINES CO., LTD. and for his Complaint alleges:

## PARTIES

1. Plaintiff, JACOB is an individual, a native of India who is a citizen of the United States residing in the Southern District of Florida.

2. Defendant, KOREAN AIR LINES CO., LTD. ("KOREAN AIR") is a foreign enterprise doing business in the Southern District of Florida conducting cargo operations out of Miami International Airport.

## JURISDICTION AND VENUE

3. Jurisdiction is based upon the provisions of Title 28 United States Code, §1331 in that the cause arises under the provisions a treaty of the United States, namely the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 (2000) ("Montreal Convention")

4. Jurisdiction is also based on the provisions of 28 U.S.C. §1332, in that it is an action brought by a citizen of a state state against a citizen of another country and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00

5. Consistent with 28 United States Code §1391(b)(3) there is no district within the United States in which this action may otherwise be brought. Therefore venue is appropriate in the Southern District of Florida in that the Defendant conducts business operations within the District.

## GENERAL ALLEGATIONS

6. On or about September 6 and 7, 2011, Plaintiff was a paying passenger on KOREAN AIR flights 054 and 655 with a routing from Honolulu to Seoul (Flight 054) connecting in Seoul to Mumbai, India (Flight 655.)

7. Upon arrival in Mumbai, Indian immigration officials mistakingly refused Plaintiff admission the country. Plaintiff had a valid visa and all appropriate and travel documents necessary for entry.

8. The mistake by the Indian authorities was not the responsibility of Korean Air Lines. It is rather the conduct of the Defendant and its agents at Mumbai and Seoul which created liability to the Plaintiff.

9. When a passenger travels without necessary documents for entry into a country, an airline is responsible to return the passenger to his country of origin. An airline may face fines from the country refusing entry, but is only so liable if it

transported the passenger and the passenger's documents were insufficient or defective.

10. Rather than seeking to determine whether JACOB'S documents were inadequate in some regard, the Defendant, through its Mumbai agents, rushed to return Plaintiff to Honolulu.

11. First they took approximately $2,000 in Indian and United States currency from him without giving him a receipt or ever returning it.

12. While at Mumbai Plaintiff requested to see American consular officials. He was told that if he stayed and did not get on the return flight he would be arrested.

13. Plaintiff advised the KOREAN AIR officials that he was ill, suffering from diabetes and high blood pressure and that he needed medical attention. Plaintiff further informed the Defendant's agent, that he had not taken his medication which was absolutely necessary.

14. Instead of granting Plaintiff's request for medical attention and over his protest, he was taken to an aircraft and placed on a flight to Seoul.

15. Once in Seoul JACOB again requested medical attention and medication.

16. Instead he was escorted to a windowless cell, in which dozens of other prisoners of both genders were held without access to food or medication.

17. Upon removal from the cell, Plaintiff, who had not eaten in quite some time requested food and medication.

18. Instead he was taken to an aircraft bound for Honolulu.

19. On the flight, deprived of medication, his condition continued to deteriorate.

20. While on board the flight to Honolulu, as a result of the neglect of his requests for medical care and medication, the long duration of his flights and private incarceration, Plaintiff's legs began to swell alarmingly.

21. Fearing he might be suffering from thrombosis, a potentially fatal condition caused by prolonged siting, Plaintiff attempted to stand and walk.

22. Plaintiff collapsed and fell, causing further injury to him.

23. Upon arrival in Honolulu, Plaintiff was unable to exit the aircraft and had to be assisted to a waiting ambulance which took him to a nearby hospital.

24. After being treated in Honolulu, Plaintiff, who had no money by virtue of the theft of his cash by KOREAN AIR agents in Mumbai, was able to arrange through friends for travel to the nearest Indian consulate in San Francisco.

25. The Indian consular representatives assured him that he had all the necessary documentation to enter India.

26. Plaintiff then flew to India, on another airline and was admitted without incident.

27. Once in India Plaintiff received additional medical care as a result of the incident on KOREAN AIR and the aggregation of his physical and mental condition. Plaintiff continues to receive medical care

### COUNT I-CLAIMS UNDER THE MONTREAL CONVENTION

28. Plaintiff realleges Paragraphs 1-24 set forth herein.

29. Both the Republic of Korea (South Korea) and the United States are signatory nations to the Montreal Convention.

30. As such the Convention sets forth the exclusive remedies for passengers traveling internationally by air.

31. Under the Convention an air carrier is strictly liable for proven damages cause by an "accident" in flight or while embarking or disembarking an aircraft. Case law has established that the creation of a medical emergency by a carrier's refusal to act upon knowledge of the existence of a serious medical condition constitutes an "accident" under the Montreal Convention.

32. As a direct and proximate result of negligence of KOREAN AIR in its refusal to provide access to necessary medical care at Mumbai and at Seoul and its confinement of Plaintiff, deprived of food and medication in its detention facilities, Plaintiff has been injured.

33. Plaintiff's injuries include but are not limited to past and future pain and suffering, mental anguish, aggravation of existing physical and emotional conditions, economic loss, medical expense. Such injuries are continuing in nature.

34. Plaintiff is limiting his claim to no more than 113,100 special drawing rights as provided in the Convention. A "special drawing right" or "SDR" is an internationally recognized artificial currency which at the time of the preparation of this complaint is convertible to approximately $172,500.

**COUNT II-CONVERSION CLAIM OUTSIDE THE MONTREAL CONVENTION**

35. Plaintiff realleges Paragraphs 1-24 set forth herein.

36. At Mumbai, agents of KOREAN AIR used their authority to take from Plaintiff approximately $2,000 which funds have not been returned despite demand therefore.

37. The Defendant owes Plaintiff $2,000 for this conversion., together with interest and costs.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury as to all issues so triable as a matter of right.

CORNELL & ASSOCIATES, P.A
Attorneys for the Plaintiff
2645 EXECUTIVE PARK DR
Weston, FL 33331
Telephone:  (954)618-1041
Facsimile:  (954) 944-1969

BY:   /s/    G. WARE CORNELL, JR.
G. WARE CORNELL, JR.
Florida Bar No. 203920
ware@warecornell.com